I represent the appellant here, Melanie Wise Green, who brought her case originally under the Rehabilitation Act, and we're here today to enforce this settlement. The first settlement was entered in 2011, and it would be a gracious thing if we could actually settle this case before it enters its second decade. You said the first settlement was 2011? Yes, sir. So there's a second settlement? Yes, sir, and then there's this dispute on the, I guess you would say, the third one that is here before the court. And so the court, at the conclusion of the first settlement, retained jurisdiction with regard to the first settlement? But it was also preserved, and even in the colloquy before Judge Roper, it was clear that the jurisdiction was still preserved, and Judge Roper said he would review anything had there been a discrepancy or disagreement about the terms of the settlement. So jurisdiction was preserved throughout? Well, he retained jurisdiction on the first settlement to deal with the first settlement, but then there was a second settlement. Did the second settlement replace the first settlement? No, sir. It was, I think you could say, inconclusive, and the whole dispute continued until the next motion to enforce settlement was filed. I don't think there was ever a dispute raised by anyone that the court didn't have continuing jurisdiction as expressed at each point. Well, and that's my concern. Nobody's raised it, but— Nobody's raised it. And even Judge Jordan, in his later decisions that we do have here on appeal, made it clear that he had retained jurisdiction. He considered that to be an ongoing retention of jurisdiction. But you understand that we can raise jurisdiction on our own if we consider jurisdiction— That's part of my argument, yes, sir, because that's what came up later, and that there is a question here. I think the government has conceded that Judge Jordan, in the district court, did not have the authority to order Ms. Wise to forego her workers' comp under the FECA workers' comp provisions. All right. You may proceed. I was just going to say, when I was sitting down last night to try to prepare for this morning, my phone dings, and I look, and at 7 o'clock, here's a Fifth Circuit case coming down. It's the updates we get as members of the bar. And the case there said that the court, the district court, had no jurisdiction on a determination that the agency's sole review was supported by statutes and regulations, the same issue we have here. What case is that? I didn't get that ding at 7 o'clock. It's 7 o'clock. And I'm not saying it's entirely on point, Judge, because the facts in that case are in a different ballpark. But for that jurisdictional issue, the case is Hendrick Medical Center versus, I guess you pronounce it, Azar, A-Z-A-R, and it's number 19-10334. But the fact that that fundamental principle about jurisdiction was repeated is the point we want to make here. And that's why under 5 U.S.C. section 8128 and 20 CFR section 10.50, the district court below had no subject matter jurisdiction, no power to order Melanie to forgo her workers' comp under the Federal Employees' Compensation Act. That's reserved strictly to the federal agencies by statute, and that even, Your Honor, raises Article III significant questions. You can't go around the grant only of limited jurisdiction to the federal courts. And that's made clear under the Federal Employment Compensation Act at the sections we just cited to you. And it's expressed in terms of anybody under 20 CFR 10.50. That's where it says not just the court, even by mandamus, by any process. No one can order a federal employee to forgo any of the benefits found that belong to them under FECA's own review process. It's an exclusive remedy, and it can't be reviewed by the courts. Now we cited a number of cases in our opening brief on that point. But you're not citing the CFR because you're saying it explains what FECA sets out. Yes, sir. You're not contending that a federal regulation can strip away the jurisdiction of an Article III court? The statute limits federal review of workers' comp strictly to the federal agency that controls that and does not waive sovereign immunity so that it falls under, say, the Tort Claims Act. Right. So you're relying on the statute? Yes, there is a statute. All right. As well as the language under the CFR, it gives expression to the statute. It's both. All right. And I believe it's the case that the government, the Veterans Administration, concedes that point. They've said that a number of times through their reply brief. Another thing that I think is crucial here is that neither party disputes the terms of the settlement agreement that were dictated into the record before Judge Roper. On appeal, neither party has disputed the terms as recorded. Now the court itself can read those terms because that's where some of our dispute arises. You have to read the words and decide what the words mean. I think at this point it might be useful to go ahead and read into the record some of the parts of that colloquy at the settlement conference that we believe will be subject  to appeal. At page 31 of the record excerpts, Attorney for the Plaintiff Appellant read into the record, Your Honor, workers' comp is completely separate and distinct from EEO claims or any other claims. Ms. Wise Green just wanted me to put on the record that part of any standard workers' comp claim is a claim for medical. Medical bills incurred by injuries caused at the office and with the workers' comp, she can seek workers' compensation benefits for a percentage of or all of whatever her pay is. And at that point, Ms. Wise Green had just wanted a clarification because she was in the process of getting medical treatment for her eyes subject to the FECA workers' comp. And that was key to her, that was critical at that moment in her life. But that doesn't mean there was a waiver of something else. The court followed that, saying, whatever workers' comp will pay doesn't have anything to do with you, the VA, speaking to counsel for the government. VA is going to get a general dismissal of all claims. This again is at page 497 of the record or page 31 of the record excerpts. To that, the government replied, that's exactly correct, Your Honor. I think that's clear. Now, what the government has talked about repeatedly is that we don't want to have it in a settlement agreement, they're tacitly agreeing that she can recover lost wages in a workers' comp case with her disability supposed to be the replacement of that. Now, on that, our interpretation would be that they were arguing you couldn't give collateral estoppel effect. They couldn't say that she was entitled to recovery of lost wages or any determination of disability because that's what was still contingent on a decision from the agencies. That's all. Is it not true that she has not elected disability retirement? She has now, pursuant to a court order, but no, she did not, and our appeal is based on the fact that her FECA claims cannot be waived, and she would prefer to pursue the FECA claims. But doesn't the settlement provide that she only gets the $150,000 if she elected disability retirement? It's not specific to that, it's that if she is found disabled. Here's the position they were in. Nobody knew what the agencies were going to do at this point, whether she would be found partially disabled, whether she would be found totally disabled, which is what happened. Both the OPM and the workers' comp under FECA found that she was totally disabled, but not for over a year later. No one knew at that point what the decision was going to be. Where we were, we were filing a Rehabilitation Act case, so we were dealing with the fact that her disability is increasing throughout. At the point that it begins to appear, she might be so disabled, she could not take equitable relief in the form of reinstatement or accommodation, then she would be able to pursue any of her other benefits as an employee of the federal government, but she would be dismissing solely, solely, Your Honor, her claims under her Rehabilitation Act lawsuit. That's what was at issue at this settlement. Not everything else that might happen to her in the rest of her life. If she couldn't get reinstated, she was getting damages for her Rehabilitation Act case. And that, I think, is made clear over and over again, as the government continued. It says, so we're just trying to leave it at, she can pursue her workers' comp and whatever she claims. That's the government's own statement. Again, at page 31 of the record excerpts. There are other versions of this, Your Honor, because it was repeated, because it was so important at page 30 of the record excerpts, and counsel for Ms. Green said, ask me to clarify that her claim for workers' compensation benefits includes medical benefits and any benefits such as lost pay. It's clear. Lost pay is what she was after. That was not what was at issue at settling her Rehabilitation Act case. And then at page 29 of the record excerpts, again, counsel for the appellant said, if the application for disability is granted, disability, not necessarily you shut down, stop, go away, we don't want to see you again. If the application for disability is granted, it's a quick agency had to grant it, all EEO charges shall be dismissed. Okay, EEO charges were still pending as well because of the exhaustion requirements under the Rehab Act. So we had not only the case filed in 2011, there were other administrative complaints that were churning through the administrative process. Let me chime in for a second. So let's jump beyond jurisdiction for a spell, big merits issue, whether the agreement, the Tell me why that argument isn't waived on appeal. The overwhelming bulk of your briefing is devoted to the jurisdictional point, that the district court lacked jurisdiction. There's a paragraph in the appellate brief about the merits, about the validity and forcibility, but it's a paragraph. I beg your pardon, Your Honor, if I may. Go ahead. We cited a number of cases, and the one called Curry v. Kaczynski is really on point. That was a female employee of the VA who was going out on disability, and she could still pursue the Rehabilitation Act remedies. That case is dead on point, and that's in the middle of our opening brief.  So it's not to me that you put kind of all your eggs in the jurisdictional basket and devoted pretty scant attention to the merits. Well, excuse me, Your Honor, but that's the way the issue had been presented. The case we were appealing changed shape on appeal after we got the reply brief from the other side where they conceded all these things. The case changed on appeal after you got their brief in response. Well, what had happened, the district judge had said, we were supposed to go away. We were supposed to just go away. She could take her minimal disability retirement benefits under the OPM, and that was it. She was out of court and out of job and out of everything, and that's what we appealed because that was in violation of the federal statute, and that's CFR Reg. 1050. And then they come back and concede that, yes, district court couldn't do that, so okay. But now in our prayer for relief at the end of the initial brief, we also said we would have to enforce the settlement. That was clear throughout, Your Honor. I don't believe the word waiver was ever raised by counsel opposite either, ever. Now, waiver they had used in the district court, but you don't see that phrase in their reply brief on appeal. Yeah, it's just my question because we have a slew of precedent that if a party doesn't adequately, in our view, doesn't adequately kind of analyze, reason, kind of present an argument that it's weight for failure to sufficiently present it to the court. Well, I should have put stars and banners around that Curry case. I should have put stars and banners around the Curry case, but it's in there, and it's so clearly on point, and we reiterated again how Melanie's case was exactly like that. The court in Curry had said you've got different injuries and different remedies, and the claimant can decide and pursue both sets of remedies, and that's what I said that Melanie had done. She had different injuries, different remedies, and she can pursue them both under that Curry case, and Curry analyzed other cases that we also had adopted in reference in the brief. There's no waiver there. All right, thank you, counsel. Your time has expired. Excuse me, Your Honor. May it please the court. May it proceed. Good morning, Your Honors. My name is Angela Williams, and I represent the Secretary of the Department of Veterans Affairs. In this case, the parties reached a settlement agreement. The settlement agreement was meant to terminate, to sever a contentious employment relationship where the parties, as counsel Opposite had mentioned, had already had one previous settlement agreement. We were before the court on that settlement agreement on a claim by the plaintiff that the VA had violated the settlement agreement. The VA vigorously defended that. The court, having had an evidentiary hearing, determined that the relationship was irrevocable, and we cite that portion of the court's transcript. The parties thereafter sought to try to reach a settlement to actually terminate that relationship. The VA went about its efforts to see what it could do to do that and looked at various retirement options for Ms. Wisegreen. And the retirement option that Ms. Wisegreen chose to accept to terminate and sever the relationship was OPM disability retirement. That is important here because after the settlement agreement Ms. Wisegreen applied for and sought FECA benefits, Federal Employee Compensation Act benefits. That is very different than OPM disability benefits. And the primary way that is different is that with FECA the relationship is not severed. Ms. Wisegreen may come back to work with the VA. The government would not have entered into a settlement agreement with Ms. Wisegreen had it known that she would pursue and receive FECA benefits because the point of the settlement was to terminate or sever a very contentious relationship that was using up a lot of resources of the government at that point. There are several things that I would like to address that counsel opposite raised. In the first instance on the issue of jurisdiction, whether the court has correctly decided an issue does not bear on whether the court actually has jurisdiction. And in this case the district court did have jurisdiction to render a decision. That is a different question than whether the decision was properly rendered. And the government cites a number of cases that support that contention. Neither Section 1015 of 20 CFR nor the statute terminates the court's jurisdiction to enforce or not enforce a settlement agreement in this particular case. And in particular the argument that 20 CFR 1015 can alter the court's jurisdiction is particularly problematic because an Article III court's jurisdiction can only be altered expressly by an act of Congress. And there has been no act of Congress that has expressly altered this court's jurisdiction. As the court well knows, the court has inherent authority to retain jurisdiction to enforce a settlement agreement. And in this particular case the court actually retained jurisdiction to do just that. Ms. Wise-Green also references 5 U.S.C. 8128B for her argument that there's statutory authority which limits the court's jurisdiction. But that is simply a red herring because what Section 8128B does is it says that if the Department of Labor makes a FECA determination, that is not reviewable. That is not what we're dealing with here. What we're dealing with here is a decision by the court to determine whether a settlement agreement is or is not enforceable. Not a review of a decision by the Department of Labor. In particular we cite several cases where the court has in fact made rulings in cases where FECA benefits come into play. So there's no statutory or case law support for the proposition that simply because FECA benefits are an issue that a court cannot have jurisdiction over a matter in which it normally does have jurisdiction. And we submit that the court does have jurisdiction in this particular case. Moving to the merits of the case, here the district court made a determination as to what the terms of the settlement agreement were. And the district court looked at the entirety of the colloquy of the settlement agreement and the district court determined that Ms. Wise-Green was only entitled to $150,000 if she retired on disability, something that she had not done. That finding by the district court is not only supported by the record, but as Judge we believe, and we make this argument in our brief, that she's actually waived her right to address that issue with this court. As the court has already said, Ms. Wise-Green spent the majority of her opening brief talking about subject matter jurisdiction and did not address the court's factual findings as to the terms of the settlement agreement.  And then if you go further and look at the merits of what the court determined the terms of the settlement agreement were, we believe that even if the court were to address that issue, that in fact the record supports the district court's determination. In that regard, the idea that simply that Ms. Wise-Green would be approved for disability or that she would be of some benefit to the VA is a very flawed argument. It makes no sense. But even if you go further to the record, it was made clear during the colloquy that the government would not agree to Ms. Wise-Green receiving FECA benefits and receiving the $150,000. As I've indicated before, the point of the settlement was to terminate or sever a very contentious employment relationship. There are multiple sites in our brief and I will note them here for the court that support that proposition. In particular, the government's counsel said on the record when Ms. Wise-Green's counsel raised the idea that she wanted to seek FECA benefits as well as for medical care as well as any lost pay, the VA's counsel responded, we can't agree to that. That was the response because again, the purpose of the settlement agreement was to sever the relationship. Further on in the colloquy, when there was some other talk about the FECA benefits, the government's counsel again said, we can't agree to her being paid lost pay when we're paying her for lost pay. The $150,000 was meant to cover the period of time that it would take for Ms. Wise-Green to have her disability application approved because she was on administrative leave without pay during this time. So the $150,000 was meant to cover that period of time that it would take for her disability application to be approved and for her to start receiving disability benefits. Further, the statements of both Ms. Wise-Green and her counsel in the colloquy support this because Ms. Wise-Green's counsel said that they were not looking to seek benefits for lost wages under FECA and that just as long as Ms. Wise-Green can seek medical compensation, that was what she was looking for under FECA benefits. And it was with those representations that the government entered into this settlement agreement. Absent those representations, the government would not have done so. What does the government hope for best case disposition? Is it affirming, is it vacating and remanding? Your Honor, the United States, the VA, I'm sorry, respectfully requests that the court can consider whether the settlement agreement should be vitiated for a mutual mistake and for, given that it cannot be enforced. The Department of Labor has weighed in on our brief. Mistake being believing that Wise was committing herself to retire? Yes. Yes, Your Honor. As indicated before, it was a central part of the agreement between the parties that the relationship would be severed. That's why the FECA benefits are important here because at any point in time, either the VA or Ms. Wise-Green can decide for her to come back to work. If she elected disability retirement under the terms of the settlement agreement, would she, in addition to the $150,000, be able to get the continued care for her eyes that she made a point about? Yes, Your Honor. My understanding is that the wage loss benefits are separate and apart from the FECA benefits, the medical part of the FECA benefits. In addition, even under the OPM retirement, you're entitled to health insurance as well. She could obviously use the FECA benefits for her medical treatment, which she had been doing and that's what she represented to the government she would do in this regard. As the court has, as we've already said, we believe looking at the entirety of the record that the proper thing to do here is to remand the case for the district court to consider whether the settlement agreement should be vitiated and the parties placed in their respective positions in this matter. In the reply brief, the plaintiff appellant, Ms. Wise-Green, said that the secretary had waived that argument, but we would note for the court that the Fifth Circuit has, on a number of occasions, remanded a matter to the district court for the district court to consider an alternate ground for its decision, and in particular, in Montelongo v. Meese, the site is 803 F. 2nd, 1341. On page 1355, it's a 1986 Fifth Circuit decision. The district court rejected the basis for, I'm sorry, the appellate court rejected the basis for the district court's decision, but remanded for the district court to consider alternate grounds, as the Fifth Circuit said that it cannot substitute its opinion for the opinion of the district court. I would be happy to address any additional questions that the court has on this matter, but we believe that the record is clear that the court has subject matter jurisdiction in this case. We believe that the terms of the settlement agreement that the district court properly found are accurate, and the terms of that settlement agreement required Ms. Weiss-Green to retire on disability retirement in order to receive the $150,000, and if the court determines that the settlement agreement cannot be abided by, pursuant to 20 CFR 1015, the district court will not be able to do so, but I'll be happy to answer any additional questions the court has. Thank you, counsel. Thank you as well. Ms. Luttle. Briefly, Your Honors. In the portion of the settlement agreement that this court was directed to by the government, counsel said for the government, we can't agree to that, Your Honor, to the extent that she's blank blank. I think we should just leave it at whatever her workers' compensation claim is. That was a clear statement from the government that appears at page 31 of the record excerpts. I don't believe there was any clear misunderstanding. If the court can't limit a claimant's ability to choose FECA benefits, the court can't limit it to just receiving medical benefits, FECA works as a whole, and I found no authority that limits a court's discretion to say, oh, take only part of your FECA benefits, because that's still substituting the decision for the claimant, which the court isn't allowed to do. We would contest the presentation that there might have been a mutual mistake. I think it was clear at all points when we repeatedly said, again, Your Honor, for the claimant, workers' comp is completely separate and distinct from EEO claims or any other claims, and Judge Roper agreed. And that was the point at which counsel opposite said, that's exactly correct, Your Honor. This is the agreement that should be enforced. I don't think there was a mutual mistake. There was uncertainty as to what would happen on the determinations, but a unilateral mistake is represented in the government's response to order, appears at docket number 69, where at the bottom of the first page, it says, at the outset, defendant notes that it was unaware of section 10.15 at the time. Any further questions, Your Honor?  Thank you, sir.